UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JANE DOE,

          Plaintiff,

    v.

GOLDEN KRUST CARIBBEAN BAKERY &
GRILL INC., GOLDEN KRUST CARIBBEAN
BAKERY INC., OLIVE LEAVES, INC., and
STANLEY DENNIS, individually,

          Defendants.

<u>**MEMORANDUM AND ORDER**</u>
18-cv-05734 (HG) (TAM)

**HECTOR GONZALEZ**, United States District Judge:

Before the Court is an action brought by Plaintiff Jane Doe against Golden Krust

Caribbean Bakery & Grill Inc., Golden Krust Caribbean Bakery Inc., Olive Leaves, Inc., and

Stanley Dennis.  ECF No. 60.  Plaintiff seeks damages for workplace harassment and retaliation

under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17; the

New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–97; and the New

York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101–31.  ECF No. 60

¶¶ 81–139.

The Golden Krust Defendants (collectively, the "Moving Defendants") move to dismiss

the second amended complaint ("SAC"), ECF No. 60, pursuant to Federal Rule of Civil

Procedure 12(b)(6); to stay discovery; and for attorney's fees and costs.[1]   ECF No. 70.  For the

reasons set forth below, the motion to dismiss is granted.

---

[1]      The Moving Defendants additionally seek to dismiss the SAC because (i) Plaintiff failed
to exhaust her administrative remedies with the Equal Employment Opportunity Commission,
ECF No. 70-21 at 17–19 and (ii) her claims are time barred, *id*. at 26–27.  Because the Court
grants the motion to dismiss for failure to state a claim, it does not address these arguments.

## BACKGROUND

On October 15, 2018, Plaintiff filed workplace harassment and retaliation claims against multiple Defendants:  three Golden Krust corporate entities; Olive Leaves, Inc.; and individual Defendant Dennis.[2]  ECF No. 1.

On February 28, 2019, Plaintiff filed a stipulation of voluntary dismissal pursuant to Rule 41(A)(1)(a)(ii), dismissing Golden Krust Franchising, Inc., with prejudice, but not the Moving Defendants.  ECF No. 14.  On April 30, 2019, the Moving Defendants filed their original motion to dismiss for failure to state a claim.  ECF No. 21.  However, a week before the motion to dismiss was filed, Plaintiff filed an amended complaint alleging claims only against the Defaulting Defendants.  ECF No. 19.  The Court treated Plaintiff's non-inclusion of the Moving Defendants in the amended complaint as a voluntary dismissal under Rule 41(a) and dismissed the complaint against the Moving Defendants without prejudice.  ECF Text Order, July 12, 2019. The Court also terminated the Moving Defendants' first motion to dismiss as moot.  ECF Text Order, July 10, 2019.

On September 14, 2021, after the Defaulting Defendants failed to appear or otherwise defend this action, the Clerk of Court entered a certificate of default pursuant to Rule 55(a).  ECF No. 54.  Plaintiff thereafter moved to file the SAC to reinstate the claims against the Moving Defendants, rather than proceed with a motion for default judgement against the Defaulting Defendants.  ECF No. 58 at 3.  The Court granted the motion to amend.  ECF No. 59.

---

[2]     Defendants Olive Leaves and Dennis allegedly co-owned the individual Golden Krust franchise where Plaintiff worked.  SAC ¶¶ 15–19.  Because both of those Defendants are in default, *see* ECF No. 54 (Clerk's Entry of Default), the Court collectively refers to them in this order as the "Defaulting Defendants."

Plaintiff filed her SAC on April 7, 2022, once again naming the Moving Defendants. ECF No. 60.  On June 17, 2022, the Moving Defendants again moved to dismiss for, among other reasons, failure to state a claim.  ECF No. 70.  On July 15, 2022, Plaintiff filed her opposition.  ECF No. 71.  On July 29, 2022, the Moving Defendants filed their reply.  ECF No. 72.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."[4]  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *see also Benny v. City of Long Beach*, No. 20-cv-1908, 2021 WL 4340789, at *7 (E.D.N.Y. Sept. 23, 2021).

---

[3]    Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits citations, internal quotation marks, and footnotes.

[4]    Moving Defendants ask the Court to consider extrinsic evidence, specifically (i) the Franchise Agreement between non-party Golden Krust Franchising, Inc. and Olive Leaves, ECF No. 70-5 (Exhibit D), and (ii) Golden Krust corporate entities' Certificates of Incorporation, ECF Nos. 70-9, 70-10, 70-16, (Exhibits H, I, O).  These documents were sent to Plaintiff after the initial complaint was filed but before the first amended complaint was filed.  ECF No. 70-21 at

**DISCUSSION**

### A.  Title VII and the Joint Employer Doctrine

As an initial matter, for a defendant to be liable for unlawful employment practices under

Title VII, an employer-employee relationship must have existed between the parties at the time

of the alleged unlawful conduct.  *See Kern v. City of Rochester*, 93 F.3d 38, 44–45 (2d Cir.

1996).  Plaintiff alleges that the Moving Defendants are liable under Title VII because they—

along with the Defaulting Defendants, who owned the individual Golden Krust franchise where

Plaintiff allegedly suffered unlawful discrimination, harassment, and retaliation—were joint

employers of Plaintiff.  ECF No. 71 at 18–24; SAC ¶¶ 12–22 (listing Defendants and alleging

that "[a]t all times material, the above named Defendants were joint employers of Plaintiff").

The Court disagrees.

"Pursuant to the 'joint employer doctrine,' an employee may assert Title VII liability

against a 'constructive employer'—an entity that shares in controlling the terms and conditions

of a plaintiff's employment."  *Felder v. U. S. Tennis Ass'n*, 27 F.4th 834, 838 (2d Cir. 2022).

─────────────────────────

10–11.  Moving Defendants argue that Plaintiff "relie[d] heavily upon [the] terms and effects" of
these documents, making them "integral to the complaint."  ECF No. 72 at 6.  Plaintiff claims
she did not rely on any of the extrinsic documents put forward by the Moving Defendants.  ECF
No. 71 at 17.

Moving Defendants' examples of Plaintiff's reliance—first, that Plaintiff repeatedly
referred to the Defaulting Defendants as "franchisees," and second, that Plaintiff referenced the
Golden Krust employee handbook—are unconvincing.  The Court finds that Plaintiff's
allegations concerning her own personal experiences working for a Golden Krust franchise are
more than sufficient for her to have understood that the owner of the business was a franchisee.
*See* SAC ¶¶ 23–31.  Moreover, the Court does not find that Plaintiff's reference to the employee
handbook in the SAC demonstrates reliance on any other document besides the handbook itself.
The extrinsic materials attached to the motion to dismiss are therefore not integral to the SAC
and do not need to be considered when deciding the motion.  *Chambers v. Time Warner, Inc.*,
282 F.3d 147, 153 (2d Cir. 2002).

Under this doctrine, "an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005).

Last year, in *Felder,* the Second Circuit first articulated a test for "what renders an entity a 'joint employer' in a Title VII case." 27 F.4th at 838.  The test in *Felder* requires a district court to analyze a list of "non-exhaustive factors drawn from the common law of agency, including control over an employee's hiring, firing, training, promotion, discipline, supervision, and handling of records, insurance, and payroll." *Id*.  Specifically, "[a] joint employer relationship exists when two or more entities, according to common law principles, share significant control of the same employee." *Pappas v. XP Controle Participacoes S.A.*, No. 19-cv-11137, 2023 WL 317353, at *4 (S.D.N.Y. Jan. 18, 2023).  "This means that an entity other than the employee's formal employer is that employee's joint employer when it has power to pay an employee's salary, hire, fire, or otherwise control the employee's *daily* employment activities, such that we may properly conclude that a constructive employer-employee relationship exists." *Id.* (emphasis added).  "While any relevant factor may be considered so long as it is drawn from the common law of agency, the *exercise of control* is the guiding indicator." *Id* (emphasis added).

The Court finds that Plaintiff has not adequately alleged that the Moving Defendants and Defaulting Defendants were joint employers.  Crucially, while the SAC alleges various aspects of day-to-day control or influence that Moving Defendants had over the Golden Krust franchise

owned by the Defaulting Defendants, *see* SAC ¶¶ 30–49, the allegations fail to articulate how

that allowed the Moving Defendants to control Plaintiff's "*daily* employment activities, such that

we may properly conclude that a constructive employer-employee relationship exists." *Pappas*,

2023 WL 317353, at \*4 (emphasis added). While the Second Circuit has recognized instances

where a parent company was so deeply involved in a subsidiary's overall decision-making as to

sustain an allegation of joint employment, *see Brown v. Daikin America Inc.*, 756 F.3d 219, 228

(2d Cir. 2014) (finding allegations that parent company had to approve *all* significant decisions

were sufficient to plausibly allege "control" by the parent company), Plaintiff's allegations here

come nowhere near establishing that level of involvement. Plaintiff, in fact, simply alleges that

the Moving Defendants required approval only over a limited set of a franchisee's decisions:

"the location of every franchise," SAC ¶ 33; the "appointment of all management level

employees," *id.* ¶ 36; and the "lease and/or purchase [of] restaurant equipment," *id.* ¶ 39.

Beyond that, Plaintiff merely alleges that Defendants offered franchisees: advice, including on

restaurant design, *id.* ¶¶ 32, 35; support services, including "established systems, procedures and

operational tools," *id.* ¶¶ 34, 37–38, 41; and optional training programs, *id.* ¶¶ 40, 48.

The most relevant, but nevertheless conclusory, allegation in the SAC regarding the joint

employer issue is that the Moving Defendants "set[] and enforce[d] requirements on all of its

franchises . . . in areas such as monitoring employee performance and specifying procedures that

employees must follow (thus controlling employees' work, including the work of Plaintiff)."

SAC ¶ 46. Plaintiff, however, does not allege that the Moving Defendants were directly

involved in her "hiring, firing, training, promotion, discipline, supervision, . . . handling of

records, insurance, [or] payroll." *Felder*, 27 F.4th at 838; *see also Yeremis v. Charter Commcn's*

*Inc.*, No. 20-cv-4723, 2021 WL 5910396, at *5–6 (S.D.N.Y. Dec. 13, 2021) (finding no joint

employer relationship where plaintiff made no allegations, among other things, "that [the

purported joint employer] had control over his hours, pay, insurance, records[,] or discipline,"

and did not describe any supervision by the purported joint employer over him).  The allegations

in the SAC, therefore, do not permit the Court reasonably to infer that the Moving Defendants

were able to control the terms and conditions of Plaintiff's "daily employment activities."

*Pappas*, 2023 WL 317353, at *4.

  The facts in *Pappas,* one of the few cases to be decided in the circuit since *Felder*,

provides a helpful contrast to the allegations here.  The *Pappas* court found that the plaintiff—a

securities broker hired by a U.S. subsidiary of a Brazil-based holding company—had plausibly

alleged that a joint employer relationship existed because plaintiff provided "specific allegations

about the run-up to his firing" which permitted such an inference.  2023 WL 317353, at *5.

Specifically, plaintiff alleged that senior management of the Brazil-based holding company

visited plaintiff's workplace at the subsidiary, evaluated plaintiff, and that as a direct result of

that evaluation plaintiff was terminated.  *Id*.  The court concluded that these allegations were

sufficient to "suggest that [the purported joint employer] had the power to control the terms and

conditions of employment for" the plaintiff.  *Id*.  Here, unlike in *Pappas*, there are no allegations

that the Moving Defendants "had any direct contact with the Plaintiff or personally supervised

her work."  ECF No. 70-21 at 19.

  The Court thus finds that Plaintiff has failed plausibly to allege an employer-employee

relationship between herself and the Moving Defendants.  Accordingly, because an "employer-

employee relationship is a primary element of Title VII claims," *Felder*, 27 F.4th at 838,

Plaintiff's Title VII claims against the Moving Defendants are dismissed.

### B. Supplemental Jurisdiction

Because the Court herein dismisses Plaintiff's Title VII claims, only Plaintiff's state law

claims under the NYSHRL and the NYCHRL against the Moving Defendants remain. The

Court, however, declines to exercise supplemental jurisdiction over those claims. "District

courts may use their discretion in deciding whether to exercise supplemental jurisdiction over

state law claims after dismissing a plaintiff's only federal claims, so long as the federal claims

were not dismissed for lack of subject matter jurisdiction." *Probiv v. PayCargo LLC*, No. 22-cv-

02907, 2023 WL 159788, at *5 (E.D.N.Y. Jan. 11, 2023); *see also* 28 U.S.C. § 1367(c)(3) ("The

district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the

district court has dismissed all claims over which it has original jurisdiction . . . ."").

Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims

against the Moving Defendants and dismisses those claims without prejudice.

### C. Dismissal with Prejudice

"The Second Circuit has stated that when a motion to dismiss is granted, the usual

practice is to grant leave to amend the complaint." *Reyes v. Cap. One Fin. Corp.*, No. 22-cv-

1176, 2023 WL 2540567, at *9 (E.D.N.Y. Feb. 28, 2023), *report and recommendation adopted*,

No. 22-cv-1176, 2023 WL 2538922 (E.D.N.Y. Mar. 16, 2023). "Nonetheless, courts may deny

leave to replead where amendment qualifies as futile." *Herbert v. Delta Airlines*, No. 12-cv-1250, 2014 WL 4923100, at *5 (E.D.N.Y. Sept. 30, 2014).

Here, the Court finds that dismissal of Plaintiff's Title VII claims with prejudice is warranted. As an initial matter, "Plaintiff has not asked for leave to amend as an alternative to denying the motion to dismiss." *Goodman v. Goodman*, No. 21-cv-10902, 2022 WL 17826390, at *21 (S.D.N.Y. Dec. 21, 2022); *see also Cybercreek Ent., LLC v. U.S. Underwriters Ins. Co.*, 696 F. App'x 554, 555 (2d Cir. 2017) ("[Plaintiff's] failure to request leave to amend alone supports the District Court's dismissal with prejudice."). Additionally, "nothing in the record suggests that another complaint could remedy the legal deficiencies." *In re Sibanye Gold Ltd. Sec. Litig.*, No. 18-cv-3721, 2020 WL 6582326, at *21 (E.D.N.Y. Nov. 10, 2020). Plaintiff's SAC—the third complaint filed in this action—was filed *after* the Moving Defendants' filed their original motion to dismiss, which raised the same bases for dismissal as the instant motion. *See* ECF Nos. 21, 60. Courts have found that dismissal with prejudice is warranted where a party has been granted an opportunity to replead after being made aware of legal deficiencies in the complaint, but fails to cure those deficiencies. *See, e.g., Nunes v. Cable News Network, Inc.*, 31 F.4th 135, 147 n.7 (2d Cir. 2022) (affirming dismissal with prejudice where motion to dismiss filed before complaint had been amended); *Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, No. 20-cv-1602, 2022 WL 4599203, at *21 (D. Conn. Sept. 30, 2022) (dismissing complaint with prejudice where court had "already granted [plaintiff] leave to amend the deficiencies in its Amended Complaint, which repleading did not cure"). Accordingly, the Court does not grant

Plaintiff leave to amend the complaint for a third time and dismisses the Title VII claims against

the Moving Defendants with prejudice.

### D. Attorney's Fees

Moving Defendants request "fees and costs" or, in the alternative, "leave to further move

to recover attorney's fees and costs."  ECF No. 70-21 at 30–32.  "[U]nder the American Rule,

absent statutory authorization or an established contrary exception, each party bears its own

attorney's fees."  *Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir. 1985).  As the Second Circuit

explained in *Colombrito*:

> The only pertinent exception for present purposes is the court's inherent
> authority to award fees when a party litigates frivolously or in bad faith.
> The bad faith exception permits an award upon a showing that the claim is
> entirely without color and has been asserted wantonly, for purposes of
> harassment or delay, or for other improper reasons.  Neither meritlessness
> alone, nor improper motives alone, will suffice.

*Id.* at 133.  In situations like this, where a case is dismissed with prejudice, an award of

attorneys' fees is strongly disfavored.  *See id.* at 134.

Moving Defendants argue that because Plaintiff did not immediately discontinue the

action after they sent her documentation purporting to show that the Moving Defendants were

"not party to the Franchise Agreement between" Defaulting Defendants and Golden Krust

Franchising, Inc., ECF No. 70-21 at 15—which they claim is "incontrovertible evidence" that

Plaintiff's action was unmeritorious—they are entitled to attorney's fees.  *Id* at 31.  The Court

disagrees.  Given that the joint employer doctrine turns on whether the parties "share significant

control of the same employee," rather than any formal written agreement, the Franchise

Agreement is not dispositive.  *Pappas*, 2023 WL 317353, at *4.  The Court thus finds that under

these circumstances the Moving Defendants have not made the necessary showing warranting an award of attorney's fees.

## CONCLUSION

For the foregoing reasons, Moving Defendants' motion to dismiss is GRANTED—Plaintiff's Title VII claims against them are dismissed with prejudice, and the state law claims against them are dismissed without prejudice.  Moving Defendants' motion to stay discovery is DISMISSED as moot.  Moving Defendants' motion for attorney's fees is DENIED.

SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated:  Brooklyn, New York
          March 27, 2023

11