UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X

JANE DOE,

                Plaintiff,

        -against-

OLIVE LEAVES, INC. and STANLEY
DENNIS,

                Defendants.

----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
18-CV-5734 (HG) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      Plaintiff Jane Doe commenced this action against Defendants Golden Krust
Caribbean Bakery & Grill Inc.; Golden Krust Caribbean Bakery Inc.; Golden Krust
Franchising, Inc.; Olive Leaves, Inc. ("Olive Leaves"); and Stanley Dennis on October
15, 2018. (Compl., ECF No. 1.) Plaintiff alleges numerous claims, including violations of
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"); the New
York State Human Rights Law, New York State Executive Law Section 296
("NYSHRL"); the New York City Human Rights Law, City of New York Administrative
Code Article 8 ("NYCHRL"); the Gender-Motivated Violence Protection Act, NYCHRL
Chapter 9; and New York State Penal Law Sections 130.52 and 130.65; as well as tort
claims for assault and battery and intentional infliction of emotional distress.

      After over five years of litigation, including two amended complaints, dismissal
of three Defendants, and an earlier entry of default, the Clerk of Court certified the
default of Defendants Olive Leaves and Stanley Dennis pursuant to Rule 55(a) of the
Federal Rules of Civil Procedure. (Clerk's Certificate of Default, ECF No. 76; *see*
Corrected Am. Compl., ECF No. 19 (hereinafter "Am. Compl."); 2d Am. Compl, ECF
No. 60; Stipulation of Voluntary Dismissal, ECF No. 14; Mar. 27, 2023 ECF Order; July

12, 2019 Order; Clerk's Certificate of Default, ECF No. 54.) Plaintiff subsequently moved for default judgment on June 20, 2023. (Notice of Mot. for Default J. Against Defs. Olive Leaves Inc. & Stanley Dennis, ECF No. 78.) For the reasons set forth below, this Court recommends that Plaintiff's motion be granted in part and denied in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Factual Allegations

Plaintiff alleges that Defendants employed her as a cashier at a Golden Krust restaurant from August 2015 through August 2017. (2d Am. Compl., ECF No. 60, ¶¶ 25, 70.) Plaintiff alleges that Defendant Dennis began engaging in inappropriate behavior towards her in or around December 2015, including asking questions that made her uncomfortable, calling to ask her to go to dinner, calling her sweetheart, telling her he loved her, and trying to hold her hand. (*Id.* ¶¶ 51–59.) Plaintiff further alleges that in March 2017, Defendant Dennis sexually assaulted her at work. (*See id.* ¶ 60–62.) Plaintiff alleges that Defendant Dennis continued to behave inappropriately toward her after the assault until she was terminated in August 2017. (*Id.* ¶¶ 61-70.)

### II. Procedural History

The Court assumes general familiarity with the substance and history of the case and includes only the background relevant to the instant motion. Plaintiff initiated this action on October 15, 2018. (Compl., ECF No. 1.) Service was initially made on Olive Leaves and Stanley Dennis on November 1, 2018, and December 19, 2018, respectively. (Affs. of Service, ECF No. 9.) Counsel for Defendants Dennis and Olive Leaves entered an appearance on March 26, 2019. (Notice of Appearance, ECF No. 16.) Following the filing of an amended complaint on April 22, 2019, Defendants Dennis and Olive Leaves answered the amended complaint on July 8, 2019. (Am. Compl., ECF No. 19; Answer to Corrected Am. Compl., ECF No. 30 (hereinafter "Answer").) On July 10, 2019, the

Honorable Ramon E. Reyes, Jr., held an initial conference and ordered a discovery schedule. (Min. Entry, ECF No. 32.) Beginning November 11, 2019, the parties filed five motions for extensions of time to complete discovery, each indicating that for various reasons, including the COVID-19 pandemic, the deposition of Defendant Dennis had not been completed. (*See* Mots. for Extension of Time to Complete Disc., ECF Nos. 35, 41, 44, 45, 46.) In the fifth request, counsel for Defendants Dennis and Olive Leaves indicated that Defendant Dennis had been in Jamaica for "most of the quarantine period," that he had "poor cell phone service in Jamaica" causing difficulties in communicating discovery issues and outstanding legal fees, and that counsel had given him notice of their intent to withdraw. (Mot. for Extension of Time to Complete Disc., ECF No. 46.) On September 24, 2020, defense counsel made a motion to withdraw, which was granted on September 30, 2020. (Notice of Mot. Withdraw, ECF No. 47; Sept. 30, 2020 ECF Electronic Order.)

After their counsel withdrew, Defendants Dennis and Olive Leaves ceased participating in the litigation. On September 30, 2020, Defendants Dennis and Olive Leaves were ordered to have new counsel file a notice of appearance within 30 days; in the absence of such notice of appearance, Plaintiff was ordered to file a status report seven days after the deadline passed. (Sept. 30, 2020 ECF Electronic Order.) On November 9, 2020, Plaintiff filed a status report noting that no new counsel had appeared, that Defendant Dennis had not responded to any of Plaintiff's attempts to contact him, and requesting 60 days to initiate a motion for default judgment. (Letter Status Update, ECF No. 49.) Judge Reyes granted Plaintiff's request and set a deadline of January 8, 2021, for Plaintiff to initiate a default motion against Defendants. (Nov. 12, 2020 ECF Order.) Following three requests for extensions of time, Plaintiff requested a certificate of default on September 7, 2021, and the Clerk of Court entered default on

September 14, 2021. (*See* Mots. for Extension of Time to File, ECF Nos. 50, 51, 52; Req. for Certificate of Default, ECF No. 53; Clerk's Certificate of Default, ECF No. 54.)

On February 11, 2022, Plaintiff requested leave to file a second amended complaint to rejoin the Golden Krust entities while staying further default proceedings against Defendants Dennis and Olive Leaves. (Status Update, ECF No. 58.) The Court granted Plaintiff's motion for leave to amend on April 1, 2022, and Plaintiff filed the second amended complaint on April 7, 2022. (Order, ECF No. 59; 2d Am. Compl., ECF No. 60.) Ultimately, Defendants Golden Krust Caribbean Bakery & Grill Inc. and Golden Krust Caribbean Bakery Inc. prevailed on their motion to dismiss for failure to state a claim and were dismissed from the case, and Plaintiff once again requested a certificate of default against Defendants Dennis and Olive Leaves (referred to herein as "Defendants"). (Mem. & Order, ECF No. 73; 2d Req. for Certificate of Default, ECF No. 75.) The Clerk of Court entered default for the second time on May 3, 2023, and after seeking an extension of time to file, Plaintiff filed a motion for default judgment on June 20, 2023. (Clerk's Certificate of Default, ECF No. 76; Mot. for Extension of Time to File, ECF No. 77, June 6, 2023 ECF Order (granting motion for extension of time); Mot. for Default J., ECF No. 78.)

On June 29, 2023, the Honorable Hector Gonzalez referred the motion for default judgment to the undersigned magistrate judge. (June 29, 2023 ECF Order Referring Mot.) On July 31, 2023, this Court issued notice of a hearing on the default motion and directed that the notice be sent to five addresses associated with Defendants, together with a full copy of the docket sheet. (July 13, 2023 ECF Scheduling Order, ECF No. 85.) On August 17, 2023, the Court held a motion hearing and Defendants did not appear. (Aug. 17, 2023 ECF Min. Entry & Order.) Since Defendants' counsel withdrew from

representation in September 2020, no attorney has appeared for Defendants and Defendants have not responded to any Court orders.

At the motion hearing, the Court indicated that Plaintiff may file a supplemental submission including "supplemental documentation or supporting authority for her pending motion, including but not limited to the request for attorney's fees and costs." (*Id*.) Plaintiff filed a supplemental submission on October 16, 2023. (Decl. of Seamus P. Barrett in Supp. of Pl.'s Mot. for Default J. with Respect to Damages, ECF No. 89 (hereinafter "Suppl. Submission").)

## DISCUSSION

### I. Legal Standards for Default

Federal Rule of Civil Procedure 55 provides a "two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered, and on the plaintiff's application, the district court may enter a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local Civ. R. 55.2(b). A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual

circumstances of a given case and to evaluate the credibility and good faith of the parties."[1] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant[s'] liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Under Federal Rule of Civil Procedure 55(b)(2), courts have discretion to decide whether an evidentiary hearing is necessary or whether the amount of damages can be determined based on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). "The district court must instead conduct an inquiry

---

[1] A plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. Having reviewed the filings in this case, the Court finds that Plaintiffs' motion papers comport with these rules. Specifically, Plaintiff (1) requested a certificate of default in accordance with Local Rule 55.1(a), (*see* Reqs. for Certificate of Default, ECF Nos. 53, 75); (2) demonstrated that Defendants have failed to defend the action and that the pleadings were properly served, in accordance with Local Rule 55.1(b), (*see* Affs. of Service, ECF No. 9; Status Update, ECF No. 58 (stating that Defendants have "refus[ed] to respond to any and all communications from Plaintiff and the Court")); and (3) certified the mailing of the motion papers to Defendant Dennis at his last known address and the business address of Defendant Olive Leaves, in accordance with Local Rule 55.2(c), (Decl. of Seamus P. Barrett in Describing Pl.'s Compliance, ECF No. 84). In addition, Plaintiff has demonstrated that Defendant Dennis "is not an infant, currently serving in the military, or incompetent in any way," as required by Local Rule 55.1(b)(1). (Seamus P. Barrett, Esq.'s 2d Aff. in Supp. of Pl.'s Req. for Certificate of Default, ECF No. 75-2, ¶ 7; *see also* Aff. of Non-Military Service, ECF No. 91.)

in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Here, too, the "plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53–54 (2d Cir. 1993) (explaining that courts can assess damages based on "'detailed affidavits and documentary evidence'" (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989))). In the default posture, the moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). For the following reasons, the Court recommends entry of a default judgment in Plaintiff's favor and an award of damages and interest, as detailed below.

## II. Entry of Default

In determining whether a defendant's conduct warrants entry of a default judgment, courts apply the same factors applicable to a motion to set aside entry of default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil*, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the

entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. In this case, the Court concludes that entry of a default judgment is appropriate.

### A. Willfulness

In the context of default, willfulness "refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). Willfulness may also be presumed where, in addition to being properly served with the complaint, the defendant is notified of court proceedings and yet fails to respond. *See, e.g.*, *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006); *see also Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 81 (E.D.N.Y. 2020). A defendant's default may still be willful even when they answered the complaint and participated in the case for a time. *See, e.g.*, *Powerserve Intern., Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (finding that the Clerk of Court properly entered default despite defendants' answering and appearing where defendants did not obtain new counsel by the court's deadline to do so); *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 123–24 (E.D.N.Y. 2011) (finding that the defendants' "repeated conduct" — including "ignor[ing] th[e] Court's order to seek substitute counsel by a given date" and failure to communicate with counsel about the case — "shows a willful and deliberate disregard for th[e] Court's orders, which militates in favor of a default judgment").

Here, Defendants answered the complaint and participated in the case initially. (*See* May 20, 2019 ECF Min. Entry (noting Defendants' appearance); Answer, ECF No. 30; July 10, 2019 ECF Min. Entry (noting Defendants' appearance).) However, once Defendants' counsel withdrew from the representation, Defendants did not follow the Court's orders to have new counsel file a notice of appearance and did not respond to any of Plaintiff's attempts at outreach. (*See* Letter Status Update, ECF No. 49.) Like in *Rodriguez*, Defendants' counsel noted in a status update and the motion to withdraw

that Defendant Dennis "has not adequately responded to counsel's attempts" "to address discovery issues and outstanding legal fees." (Mot. for Extension of Time to Complete Disc., ECF No. 46; *see also* Aff. of S. Jeanine Conley Daves in Supp. of Mot. to Withdraw, ECF No. 47-1, ¶¶ 3–11.) In light of Defendants' failure to respond, despite being provided notice at least three times of the initiation of default proceedings, the Court weighs this factor in favor of default.

### B. Meritorious Defense

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co., Ltd., v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). However, a defendant must "present evidence of facts that, if proven at trial, would constitute a complete defense." *McNulty*, 137 F.3d at 740 (quotation marks omitted).

Here, Defendants filed an answer denying the allegations in the complaint and asserting numerous affirmative defenses. (Answer, ECF No. 30.) As discussed further *infra*, Defendants' denials and defenses are conclusory and boilerplate, unsupported by any facts or evidence, and they have been abandoned given Defendants' failure to continue participating in this lawsuit. *See, e.g.*, *First Tech. Cap., Inc. v. Airborne, Inc.*, 378 F. Supp. 3d 212, 219 (W.D.N.Y. 2019) (holding that a defendant who previously answered and asserted an affirmative defense abandoned its assertion of any defense to Plaintiff's claims by defaulting). The Court therefore weighs this factor in favor of default.

**C. Prejudice**

"The final factor the Court must consider is whether the non-defaulting part[y] would be prejudiced if the motion for default were to be denied." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 148 (E.D.N.Y. 2013). Denying a motion for default is prejudicial to the plaintiff where "'there are no additional steps available to secure relief.'" *Id.* (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Jan. 26, 2009 ECF Endorsement).

In light of Defendants' failure to respond to both Plaintiff's and the Court's notices, "there is no indication that requiring Plaintiff[] to take further steps . . . would be effective in eliciting a response from Defendants." *Mason Tenders*, 2003 WL 1960584, at *3. The Court therefore finds that Plaintiff would be unfairly prejudiced by denial of the motion for default.

All three factors weigh in favor of default. Seeing no other equitable reason for denying Plaintiff's motion, the Court recommends entering a default judgment.

**III. Liability**

The second amended complaint includes fourteen causes of action[2] which can be summarized as follows: six employment discrimination-related claims, four

---

[2] The causes of action listed in the complaint are (1) discrimination on the basis of sex and causing a hostile work environment in violation of Title VII against Defendant Olive Leaves; (2) unlawful retaliation in violation of Title VII against Defendant Olive Leaves; (3) discrimination on the basis of sex, sexual harassment, sexual assault, and causing a hostile work environment in violation of the NYSHRL against all Defendants; (4) aiding and abetting

employment retaliation claims, two tort claims, one claim under the New York Penal Law, and one claim for violation of the Gender-Motivated Violence Protection Act under the New York City Administrative Code. (2d Am. Compl., ECF No. 60, at 13–23.)

## A. Employment Discrimination Claims

### 1. *Hostile Work Environment*

#### a. Title VII and the NYSHRL[3]

The standard for showing a hostile work environment under Title VII and the NYSHRL are essentially identical, and therefore these claims will be analyzed together. *See Hoag v. Fallsburg Cent. Sch. Dist.*, 279 F. Supp. 3d 465, 479 (S.D.N.Y. 2017); *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011).

---

discriminatory behavior in violation of the NYSHRL against all defendants; (5) retaliation in violation of the NYSHRL against all Defendants; (6) intentional infliction of emotional distress against Defendant Dennis; (7) discrimination on the basis of sex and gender and causing a hostile work environment in violation of the NYCHRL, Section 8-107(1), against all Defendants; (8) retaliation in violation of the NYCHRL, against all Defendants; (9) aiding and abetting the seventh and eighth causes of action in violation of the NYCHRL, Section 8-107(6), against all Defendants; (10) interference with protected rights in violation of the NYCHRL, Section 8-107(19), against all Defendants; (11) employer liability for discrimination in violation of the NYCHRL, Section 8-107(13), against all Defendants; (12) assault and battery against Defendant Dennis; (13) forcible touching and sexual abuse in the first degree against Defendant Dennis; and (14) violation of the Gender-Motivated Violence Protection Act under the NYCHRL, against Defendant Dennis. (2d Am. Compl., ECF No. 60, at 13–23.)

[3] As a threshold matter, the Court notes that Plaintiff did not allege that Defendants employed 15 or more employees, as required by Title VII. 42 U.S.C. § 2000e(b). However, the Supreme Court has found that the limitation of Title VII coverage to employers with 15 or more employees is a "nonjurisdictional claim-processing rule[], which seek[s] to promote the orderly process of litigation by requiring that the parties take certain procedural steps at certain specified times." *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1849 (2019) (quotation marks omitted). "[A]n objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point." *Id.* (quotation marks omitted). As Defendants did not raise an affirmative defense related to Title VII's employee threshold, the Court considers this potential defense forfeited.

Title VII is violated when, based on an employees' race, color, religion, sex, or national origin, "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and quotation marks omitted); *see also Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015). This standard contains both objective and subjective components. First, "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive," and second, "the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (citing *Harris*, 510 U.S. at 21–22; *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)); *see also Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 604–05 (2d Cir. 2006). In conducting this analysis, "courts . . . 'examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance.'" *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (alterations in original) (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)).

Notably, the Second Circuit has observed that even though "the standard for establishing a hostile work environment is high, . . . [t]he environment need not be 'unendurable' or 'intolerable.'" *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)); *see also Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000) ("[T]he fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases."); *Geras v. Hempstead Union Free Sch. Dist.*, 149 F. Supp. 3d 300, 335 (E.D.N.Y. 2015). In addition, to

succeed on a hostile work environment claim under Title VII or the NYSHRL, "the plaintiff must show that 'a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" *Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d at 452 (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 221 (2d Cir. 2004)).

In the second amended complaint, Plaintiff alleges the following key facts that support her hostile work environment claim:[4] (1) in December 2015, Defendant Dennis asked Plaintiff "a series of questions," including whether she had a boyfriend, (2d Am. Compl., ECF No. 60, ¶ 51); (2) in January 2016, Defendant Dennis talked to a coworker, who then reported to Plaintiff that Defendant Dennis "says you're sexy," (*id.* ¶ 52); (3) in February 2016, Defendant Dennis asked for Plaintiff's phone number and "called Plaintiff weekly and demand[ed] she meet with him and have dinner," and told her he was interested in her and that he had "been making excuses to see [her] outside of work," (*id.* ¶¶ 54–56); and (4) in 2016 and 2017, Defendant Dennis continued to ask Plaintiff to "meet with him alone in his office" while he "allowed all other male employees to work in peace," began to call Plaintiff "sweetheart," told her that he loved her, and attempted to hold her hand, *(id.* ¶¶ 57–59).

The most serious incident alleged in the complaint occurred in March 2017, when Defendant Dennis "demanded Plaintiff help him remodel [his] 1617 Church Avenue . . .

---

[4] The Court notes that Plaintiff's memorandum of law in support of her motion for default judgment contains no substantive analysis of any of the causes of action alleged in the complaint; however, this does not bar the Court's consideration of her motion. *Cf. Choi v. 37 Parsons Realty LLC*, 642 F. Supp. 3d 329, 331 (E.D.N.Y. 2022) ("[W]hen considering a motion for a default judgment in which the defendants have not appeared . . . , the court is allowed, but not required, to consider whether the complaint states a claim, and the motion for a default judgment should only be denied if the pleading is clearly insufficient.").

store." (*Id.* ¶ 60.) When they finished cleaning, Defendant Dennis "grabbed Plaintiff by the arm[] and attempted to pull Plaintiff into his office" while Plaintiff resisted by holding onto a door frame. *(Id.)* Defendant Dennis pulled Plaintiff into the office and

> threw Plaintiff in a chair[,] . . . squeezed Plaintiff's legs together with his legs, . . . held Plaintiff's hand down as he lifted up her shirt[], . . . pulled Plaintiff's bra down exposing her breasts[,] . . . tilted his head down and tried to suck on Plaintiff's exposed nipple[, and] . . . then attempted to untie Plaintiff's sweatpants and put his hand down Plaintiff's pants,

all while Plaintiff continued to push Defendant Dennis until she "finally broke free and ran out of the office." (*Id.*) Plaintiff further alleges that in June of 2017, following the May 2017 physical assault, Defendant Dennis "relentlessly continued to call Plaintiff[,] . . . demanded Plaintiff sit with him inside of his car[, and] . . . told Plaintiff that he did not like [her] ignoring him and not answering his calls." (*Id.* ¶¶ 62–63.) Plaintiff claims that the next month, Defendant Dennis walked up to her, "grabbed [her] from behind, and with his finger made an 'X' on the back of [her] neck[; later] . . . proclaim[ing] to [other] employees . . . that he was in love with Plaintiff and the 'X' was to mark [her] as his property." (*Id.* ¶ 64.) On the same day, Plaintiff alleges that Defendant Dennis asked Plaintiff, "Can I have you?" and "became irate" and kicked Plaintiff when she said no. (*Id.* ¶ 65.)

"Even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII." *Antoine*, 489 F. Supp. 3d at 84 (quotation marks omitted); *Alfano*, 294 F.3d at 374 ("[I]t is well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace."). Given Plaintiff's allegations that Defendant Dennis sexually assaulted her at work, which assault included forcible touching, exposing her breasts, and subsequent conduct asserting that she was his property and his refusal to accept her rejections, the Court

respectfully recommends finding that her hostile work environment claims are well pleaded in the complaint and establish Defendant Dennis's liability.

Defendant Dennis's behavior may also be imputed to the employer, Defendant Olive Leaves. "An employer may be held vicariously liable under Title VII when a supervisor creates a hostile work environment." *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d Cir. 2001) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). Employers may present "an affirmative defense to liability that the employer had exercised reasonable care to avoid harassment and to eliminate it when it might occur." *Faragher*, 524 U.S. at 805. Defendants stated in their answer to the first amended complaint[5] that they made

> good faith efforts to prevent discrimination[;] . . . [they] did not encourage, condone, authorize, or otherwise ratify any of the alleged wrongful behavior about which Plaintiff complains[;] . . . [they] exercised reasonable care to establish and maintain a reasonable written policy . . . for the prevention and detection of unlawful discrimination, harassment and retaliation, including an internal complaint procedure[;] . . . [and] Plaintiff unreasonably failed to promptly report any alleged discrimination or harassment under Defendants' written policy, or take advantage of any preventative or corrective opportunities provided by Defendants.

(Answer, ECF No. 30, at 10, 12.) While asserting that Plaintiff did not report the harassment she experienced, (*see id.*), Defendants have also admitted that Defendant Dennis "was Plaintiff's supervisor and the proprietor of Defendants' business where Plaintiff was employed" and that Defendant Dennis "held supervisory authority over

---

[5] The Court notes that the second amended complaint is the operative complaint for the purposes of this motion for default judgment. However, the differences between the first and second amended complaints relate exclusively to Plaintiff's attempt to "bring back the Golden Krust entities as defendants." (Order, ECF No. 59, at 4 (quotation marks omitted).) Because Defendants defaulted prior to the filing of the second amended complaint, the Court looks to their answer to the first amended complaint to assess asserted defenses. (*See* Clerk's Certificate of Default, ECF No. 54.)

Plaintiff with regard to her employment," (Am. Compl., ECF No. 19, ¶¶ 17-18; Answer, ECF No. 30, ¶¶ 17–18). Given the allegations that Defendant Dennis was Plaintiff's supervisor and the proprietor of the business, the Court has no difficulty concluding that Olive Leaves is liable for Defendant Dennis's conduct.[6] Therefore, the Court recommends finding Defendant Olive Leaves liable for Plaintiff's hostile work environment claims under Title VII and the NYSHRL.

Plaintiff includes a cause of action for aiding and abetting the hostile work environment under the NYSHRL, under which a court may find individual liability. (2d Am. Compl., ECF No. 60, ¶¶ 93–95.) *See* N.Y. Exec. Law § 296(6) ("It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."). Based on the actions discussed above, Plaintiff has adequately pleaded specific facts to support the conclusion that Defendant Dennis should be found liable under the aiding and abetting prohibition. Accordingly, the Court recommends finding Defendant Dennis liable for aiding and abetting a hostile work environment under the NYSHRL.[7]

---

[6] The Court further notes that Defendants' answer is internally inconsistent and "does nothing more than deny the individual factual allegations and raise boilerplate defenses in conclusory language. It does not put a separate theory of the case before the Court, and has entirely failed to otherwise explain its raised defenses or provide the Court with a basis by which to assess or analyze them." *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Danco Painting, LLC*, No. 17-CV-5739 (NLH) (KMW), 2021 WL 3674353, at *4 (D.N.J. Aug. 19, 2021). Additionally, as noted above, Defendants' defenses have been abandoned.

[7] Plaintiff alleges the cause of action for aiding and abetting under the NYSHRL against both Defendants. (2d Am. Compl., ECF No. 60, at 15.) However, it defies the plain meaning of "aid and abet" to find that Defendant Olive Leaves aided and abetted itself in creating a hostile work environment. *See* aid & abet, *Cornell Law School Wex*, https://www.law.cornell.edu/wex/aid_and_abet (defining "aid and abet" as "to assist someone in committing or to encourage someone to commit a crime") (last visited Feb. 12, 2024). Accordingly, the Court recommends dismissal of Plaintiff's aiding and abetting claim under the NYSHRL against Defendant Olive Leaves.

b. <u>NYCHRL</u>

Courts must analyze NYCHRL claims "separately and independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). Under the NYCHRL, plaintiffs "need not establish severe and pervasive conduct to establish liability, so long as the behavior complained of is worse than petty slights and trivial inconveniences." *Adams v. City of New York*, 837 F. Supp. 2d 108, 128 (E.D.N.Y. 2011) (quotation marks omitted). "The NYCHRL provides for individual liability on either a direct theory or on an 'aiding and abetting' theory." *Batten v. Glob. Contact Servs., LLC*, No. 15-CV-2382 (NG) (SJB), 2018 WL 3093968, at *9 (E.D.N.Y. June 22, 2018). Because courts addressing NYCHRL claims "take an analytical approach that closely parallels the analysis used for corresponding Title VII claims" but the NYCHRL permits claims that are not severe and pervasive, the Court respectfully recommends finding Defendants Olive Leaves and Dennis liable for a hostile work environment under the NYCHRL given that Plaintiff's allegations suffice under the higher standard. *Berger-Rothberg v. City of New York*, 803 F. Supp. 2d 155, 165 n.5 (E.D.N.Y. 2011).

2. *Discrimination on the Basis of Sex*

a. <u>Title VII and the NYSHRL</u>

Courts analyze claims of discrimination under both Title VII and the NYSHRL using the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting framework. *McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015). Under this framework, "a plaintiff must show that (1) [she] is a member of a protected class; (2) [she] was qualified for the position [she] held; (3) [she] suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Ruiz v. County of Rockland*, 609 F.3d 486, 491–92

(2d Cir. 2010); *see also Ferraro v. Kellwood Co.*, 440 F.3d 96, 99 (2d Cir. 2006) ("In discrimination claims brought under the [NYSHRL] . . . , the burden-shifting framework established by the Supreme Court in *McDonnell Douglas* . . . applies.").

The second amended complaint alleges the following facts in support of Plaintiff's *prima facie* case of discrimination: (1) Plaintiff is a member of a protected class due to her sex; (2) Plaintiff was qualified for the position of cashier, evidenced by her hire and Defendants' continued employment of her for two years; and (3) Defendants terminated Plaintiff after she rejected Defendant Dennis's advances. (2d Am. Compl., ECF No. 60, ¶¶ 12, 25, 69, 70.)

"An inference of discrimination arises if 'the employer treated plaintiff less favorably than a similarly situated employee outside [her] protected group.'" *Bright v. Coca Cola Refreshments USA, Inc.*, No. 12-CV-234 (BMC), 2014 WL 5587349, at *1 (E.D.N.Y. Nov. 3, 2014), *aff'd sub nom. Bright v. Coca-Cola Refreshments USA, Inc.*, 639 F. App'x 6 (2d Cir. 2015) (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)). "An employee is similarly situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" *Ruiz*, 609 F.3d at 493–94 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)). The plaintiff need not establish that the comparator's circumstance was "identical" — merely similar "'in all material respects.'" *Id.* (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).

Plaintiff has alleged myriad facts in the amended complaint that support an inference of discrimination, including: the instances of harassment to which Defendant Dennis subjected Plaintiff, *see supra*; Defendant Dennis did not subject male employees to the same treatment, (2d Am. Compl., ECF No. 60, ¶ 57); Defendant Dennis asked Plaintiff, "Can I have you?" one month before her termination and became "irate" when

she said no, (*id.* ¶ 65); and Defendant Dennis made unwanted sexual advances towards another woman and she too was contemporaneously terminated, (*id.* ¶¶ 68, 70–71). Accordingly, the Court finds that Plaintiff has alleged sufficient facts to plead a *prima facie* case of employment discrimination.

After a plaintiff establishes a *prima facie* case of discrimination, "the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (quoting *McDonnell Douglas*, 411 U.S. at 802). Defendants stated in their answer to the first amended complaint that "the employment actions about which [Plaintiff] complains were based on legitimate, non-discriminatory factors." (Answer, ECF No. 30, at 11.) Beyond this conclusory statement, Defendants proffer no actual reason for Plaintiff's termination, legitimate or otherwise, and have abandoned this case. Accordingly, Defendants have not shifted the burden back to Plaintiff. Thus, the Court respectfully recommends finding Defendant Olive Leaves liable for employment discrimination under Title VII and the NYSHRL and finding Defendant Dennis liable for aiding and abetting employment discrimination under the NYSHRL.

    b. NYCHRL

Under the NYCHRL, a "plaintiff need only show differential treatment — that she is treated 'less well' — because of a discriminatory intent." *Mihalik*, 715 F.3d at 110 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (App. Div. 1st Dep't 2009)). The Court finds that Plaintiff has established that she was treated less well because of her gender based on the allegations discussed above. Furthermore, the NYCHRL "provides for individual liability . . . if the individual defendant actually participated in the conduct giving rise to the claim." *Yu v. Shanghai Dumpling, Inc.*, No. 19-CV-7601 (ALC), 2023 WL 3728347, at *5 (S.D.N.Y. May 30, 2023). Again, Plaintiff has alleged

sufficient facts to establish that Defendant Dennis participated in the complained-of conduct. The Court respectfully recommends that both Defendants be found liable for employment discrimination under the NYCHRL.[8]

### 3. *Retaliation Claims*

To plead a retaliation claim under Title VII and the NYSHRL, a plaintiff must allege specific facts from which to reasonably infer "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)); *see Edelman v. NYU Langone Health Sys.*, No. 21-CV-502 (LJL), 2023 WL 8892482, at *13 (S.D.N.Y. Dec. 26, 2023). Title VII protects employees for both opposing practices made unlawful by Title VII or participating in an investigation or proceeding under Title VII. *Littlejohn*, 795 F.3d at 316. An employee opposes unlawful activity "[w]hen [she] communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination." *Crawford v. Metro. Gov. of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009) (quotation marks omitted).

For a retaliation claim under the NYCHRL, a plaintiff must allege the following essential elements:

> (1) he or she engaged in a protected activity as that term is defined under the NYCHRL, (2) his or her employer was aware that he or she participated in such activity, (3) his or her employer engaged in conduct

---

[8] Plaintiff additionally asserts a cause of action for both Defendants' violation of NYCHRL Section 8-107(13), which provides for "[e]mployer liability for discriminatory conduct by employee[s], agent[s], or independent contractor[s]." N.Y.C. Admin. Code § 8-107(13). (*See* 2d Am. Compl., ECF No. 60, ¶¶ 120–22.) However, the provision does not apply for violations of subdivision 1 of the NYCHRL, *id.*, under which the Court has recommended Defendants be found liable. Accordingly, the Court recommends dismissing Plaintiff's claim under Section 8-107(13).

which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct.

*Bilitch v. N.Y.C. Health & Hosps. Corp.*, 148 N.Y.S.3d 238, 246 (App. Div. 2d Dep't 2021); *see also Smith v. City of New York*, 385 F. Supp. 3d 323, 345–46 (S.D.N.Y. 2019) ("The elements of a prima facie case of retaliation under Title VII, the NYSHRL, and the NYCHRL are 'identical,' except that the NYCHRL employs a broader standard of an 'adverse employment action' than its federal and state counterparts." (quoting *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 70 (S.D.N.Y. 2016))).

Plaintiff's amended complaint does not include factual allegations from which to infer that she communicated a belief to Defendants that they were creating a hostile work environment, otherwise discriminating against her, or interfering with her protected rights. *See* N.Y.C. Admin. Code § 8-107(7), (19). Accordingly, she has failed to articulate sufficient facts for the Court to conclude that she is entitled to a default judgment on her retaliation claims under Title VII, the NYSHRL, or the NYCHRL. *See Romanowicz*, 577 F.3d at 84. Consequently, the Court recommends denying Plaintiff's motion with respect to her retaliation claims and dismissing them without prejudice as they are not well pleaded.

### B. Tort Claims

Plaintiff's complaint makes claims for intentional infliction of emotional distress and assault and battery under state law against Defendant Dennis. (2d Am. Compl., ECF No. 60, at 16–17, 21.)[9]

#### 1. *Assault and Battery*

A plaintiff states a claim for assault and battery under New York law by establishing "an intentional placing of another person in fear of imminent harmful or offensive contact" and "an intentional wrongful physical contact with another person without consent," respectively. *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001) (quotation marks omitted). Plaintiff's allegations related to the March 2017 assault "leave no room for interpretation." *Antoine*, 489 F. Supp. 3d at 90 (finding a defendant liable for assault and battery when defendant locked plaintiff in a room with him, pushed her onto a bed, and sexually assaulted her). The Court finds that Plaintiff has adequately alleged facts to establish the essential elements of assault and battery.

Defendants' answer puts forth the affirmative defenses that Defendant Dennis "did not intend to cause a reasonable apprehension for harmful or offensive contact[,] . . . did not act violently toward the Plaintiff[, and] . . . did not commit a battery because the Plaintiff suffered no injury due to any alleged physical contact [Defendant] Dennis initiated." (Answer, ECF No. 30, at 11.) Defendants' conclusory statements in their

---

[9] While Plaintiff's tort claims might have been time barred, *see* N.Y. C.P.L.R. § 215(3) (imposing a one-year statute of limitations for intentional torts), Defendants did not raise the statute of limitations as an affirmative defense in their answer, (Answer, ECF No. 30, at 10–12). *But see* N.Y. C.P.L.R. § 213-c (providing a twenty year statute of limitations period for civil actions based on certain sex crimes). Defendants who fail to raise the statute of limitations as a defense in an answer or motion to dismiss waive the defense. *Mendez v. Steen Trucking, Inc.*, 680 N.Y.S.2d 134, 135 (App. Div. 4th Dep't 1998). Because Defendants failed to raise a time bar as an affirmative defense, the Court need not decide whether the one-year or the twenty-year statute of limitations is applicable.

answer, which have since been abandoned, do not put forth facts or evidence that would warrant finding that Plaintiff has not alleged sufficient facts to establish Defendant Dennis's liability in this default posture. *See Am. All. Ins. Co.* 92 F.3d at 61. Furthermore, whether Plaintiff sustained an injury is not an element of battery. *See Girden*, 262 F.3d at 203. Accordingly, the Court recommends finding Defendant Dennis liable for assault and battery.

2. *Intentional Infliction of Emotional Distress*

The New York Court of Appeals has expressed doubt that "the doctrine of liability for intentional infliction of extreme emotional distress should be applicable where the conduct complained of falls well within the ambit of other traditional tort liability." *Fischer v. Maloney*, 43 N.Y.2d 553, 558 (1978); *see also De Santis v. City of New York*, No. 10-CV-3508 (NRB), 2011 WL 4005331, at *11 (S.D.N.Y. Aug. 29, 2011) ("[W]e note that De Santis has alleged no additional facts beyond those which form the basis of his other claims to support a claim of intentional infliction of emotional distress."); *Bacon v. Nygard*, 35 N.Y.S.3d 25, 26 (App. Div. 1st Dep't 2016) (finding intentional infliction of emotional distress claims duplicative with *prima facie* tort claims where "the underlying allegations fall within the ambit of the [other tort] causes of action" (quotation marks omitted)). In the absence of any factual allegations in the complaint alleging unique facts that would support an independent intentional infliction of emotional distress claim in addition to Plaintiff's assault and battery claim, the Court recommends denying Plaintiff's motion for default judgment as to intentional infliction of emotional distress because the claim is duplicative.

**C. Penal Law Claim**

The second amended complaint includes a cause of action for violations of New York Penal Law sections 130.52 and 130.65, which establish *criminal* liability for forcible

touching and sexual abuse, respectively. (2d Am. Compl., ECF No. 60, at 21–23.)
Plaintiff seems to base her theory of a private right of action under the Penal Law in the
Civil Practice Law and Rules section related to statutes of limitation. (*Id.* ¶ 131 (citing
N.Y. C.P.L.R. § 213-c).) Plaintiff's memorandum of law in support of her motion for
default judgment does not elaborate on why she believes this state rule of civil
procedure gives her a private right of action to enforce New York's criminal laws in
direct contradiction with the well established principle that "there is no private right of
action to enforce state or federal criminal statutes." *Ming v. Brouillete*, No. 23-CV-86
(MAD) (ML), 2023 WL 5779558, at *3 (N.D.N.Y. Apr. 7, 2023) (collecting cases), *report
and recommendation adopted*, 2023 WL 5444485 (N.D.N.Y. Aug. 24, 2023). Accordingly, the
Court recommends dismissing Plaintiff's claim brought under the New York Penal
Law.

### D. Violation of the Gender-Motivated Violence Protection Act

A plaintiff states a claim under the Gender-Motivated Violence Protection Act
("GMVPA") by establishing "(1) the alleged act constitutes a misdemeanor or felony
against the plaintiff; (2) presenting a serious risk of physical injury; (3) that was
perpetrated because of plaintiff's gender; (4) in part because of animus against
plaintiff's gender; and (5) resulted in injury." *Hughes v. Twenty-First Century Fox, Inc.*,
304 F. Supp. 3d 429, 455 (S.D.N.Y. 2018). For nearly 20 years since the enactment of the
GMVPA, courts have struggled with how to determine defendants' motivation and
animus. *See Breest v. Haggis*, 115 N.Y.S.3d 322, 328–29 (App. Div. 1st Dep't Dec. 26, 2019)
(discussing trial courts' interpretations of the GMVPA as either requiring "extrinsic
evidence of the defendant's expressed hatred toward women as a group" or finding
animus under a "totality of the circumstances" approach). The *Breest* court ultimately
held that allegations of rape and sexual assault are sufficient to state a claim under the

GMVPA, because "[m]alice or ill will based on gender is apparent from the alleged commission of the act itself[; a]nimus inheres where consent is absent." *Id.* at 330.

Here, Plaintiff has alleged an act that would constitute a misdemeanor or felony. *See* N.Y. Penal Law § 130.52 (defining as a misdemeanor forcible touching where a person "intentionally, and for no legitimate purpose[,] . . . forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person, or for the purpose of gratifying the actor's sexual desire"); § 130.65 (defining as a class D felony sexual abuse in the first degree when a person "subjects another person to sexual contact[] . . . [b]y forcible compulsion"). "[S]exual assault represent[s] a serious risk of physical injury, as evidenced by the Supreme Court's statement that sexual assault is a violent crime because it normally involves force . . . to overcome the will and capacity of the victim to resist." *Doe v. Gonzalez*, No. 21-CV-4580 (JS) (LGD), 2023 WL 5979182, at *6 (E.D.N.Y. Aug. 4, 2023) (quotation marks and alterations omitted) (referencing *Coker v. Georgia*, 433 U.S. 584, 597–98 (1977)), *report and recommendation adopted in relevant part*, 2023 WL 6211023 (E.D.N.Y. Sept. 25, 2023). As discussed above, "allegations of rape or sexual assault are, by themselves, sufficient to plead animus based on the victim's gender." *Id.* at *6 (quotation marks omitted) (recommending granting plaintiff's motion for default judgment); *see also Doe v. Gooding*, No. 20-CV-6569 (PAC), 2021 WL 5991819, at *5 (S.D.N.Y. July 29, 2021) (granting plaintiff's motion for default judgment on GMVPA claims). Plaintiff has alleged that she suffered an injury, stating that she "felt extremely humiliated, degraded, victimized, embarrassed[,] and emotionally distressed" because of Defendant Dennis's alleged actions. (2d Am. Compl., ECF No. 60, ¶ 72); *see Gonzalez*, 2023 WL 5979182, at *6 (finding that a plaintiff alleged injury under the GMVPA because she experienced depression, anxiety, and post-traumatic stress disorder).

Defendants' answer asserts that Defendant "Dennis engaged in a consensual romantic relationship with the Plaintiff during Plaintiff's employment." (Answer, ECF No. 30, at 11.) This unsupported and conclusory allegation, which Defendant Dennis has abandoned, does not undermine the specific factual allegations indicating that the assault was without Plaintiff's consent. Accordingly, the Court recommends finding Defendant Dennis liable for a violation of the GMVPA.

## IV. Damages

In support of her claim for damages, Plaintiff submitted the following: (1) a memorandum of law requesting $1,500,000 in damages, (Mem. of Law, ECF No. 80, at 5); (2) Plaintiff's declaration, discussing her damages including "loss of income, . . . emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses," (Pl.'s Decl., ECF No. 81, ¶ 45); (3) a declaration from Plaintiff's pastor, discussing Plaintiff's damages in identical language as Plaintiff's declaration, (Witness Stephen Lewis's Decl., ECF No. 82, ¶ 15 ("hereinafter Lewis Decl.")); and (4) an evaluation performed by a licensed clinical psychologist in October 2019, (Aff. of Psychologist, ECF No. 83-1).

"Violations of Title VII, NYSHRL, and NYCHRL entitle a plaintiff to compensatory damages for pecuniary loss as well as pain and suffering." *Antoine*, 489 F. Supp. 3d at 92 (quotation marks omitted). Related to these claims, the Court may award back pay, front pay, prejudgment interest, emotional distress damages, punitive damages, and post-judgment interest. *See id.* at 92, 94–97, 100, 102. "Punitive damages are also recoverable in an action for assault and battery under New York law . . . ." *Id.* at 101. The GMVPA allows compensatory and punitive damages as well. N.Y.C. Admin. Code § 10-1104(a); *see also Gonzalez*, 2023 WL 5979182, at *8–9 (awarding $2,000,000 in compensatory damages and $1,750,000 in punitive damages in a motion for default

judgment for claims including, *inter alia*, violation of the GMVPA where a plaintiff alleged a long-term pattern of sexual abuse, including repeated statutory rapes that began when she was 13 years old and production of child pornography, and at least one instance of forcible sexual intercourse). Here, given the nature of Plaintiff's core claims, "[s]ince there is no precise formula to compute damages, it is within the court's discretion to determine whether an evidentiary hearing is necessary." *Id.* at *7.

Based on the allegations in the pleadings and affidavits submitted in support of the default motion, the Court recommends an award of damages as follows, in addition to providing Plaintiff leave to submit additional documentation as to what compensatory damages should be awarded as to her employment-law claims, which claims may be determined with greater mathematical precision.[10]

### A. Emotional Distress Damages

As to Plaintiff's employment, tort, and GMVPA claims, the Court recommends an award of emotional distress damages. Awards for emotional distress in the Second Circuit "can generally be grouped into three categories of claims: 'garden-variety,' 'significant[,]' and 'egregious.'" *Rodriguez v. Exp. World Wide, LLC*, No. 12-CV-4572 (RJD) (RML), 2014 WL 1347369, at *6 (E.D.N.Y. Jan. 16, 2014) (quoting *Rainone v.*

---

[10] Plaintiff has not provided sufficient detailed evidence to support all of her requested damages. To award back pay, front pay, and commensurate pre-judgment interest as to her employment claims, the Court must assess the facts of Plaintiff's employment, including, for example, her wages at the time she was fired, how long she was unemployed, and what efforts she undertook to find other suitable employment during unemployment. Plaintiff has not supplied any such information. Accordingly, the Court recommends permitting Plaintiff an opportunity to file a supplemental submission within one week of the issuance of this Report and Recommendation. *See, e.g.*, *James v. Arango*, No. 05-CV-2593 (TCP) (AKT), 2011 WL 4382656, at *1 (E.D.N.Y. Aug. 9, 2011) (recommending additional damages following a supplemental filing from the plaintiff), *report and recommendation adopted*, 2011 WL 4382586 (E.D.N.Y. Sept. 20, 2011).

*Potter*, 388 F. Supp. 2d 120, 122 (E.D.N.Y. 2005)), *report and recommendation adopted*, 2014 WL 1350350 (E.D.N.Y. Mar. 31, 2014).

> At the lower end of the emotional distress damages spectrum are cases involving garden-variety claims, in which damages ranging from $5,000 to $35,000 are appropriate. In such cases, the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury. The middle of the spectrum consists of significant ($50,000 up to $100,000) and substantial emotional distress claims ($100,000). These claims differ from the garden-variety claims in that they are based on more substantial harm or more offensive conduct, are sometimes supported by medical testimony or evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other, corroborating witnesses. Finally, egregious emotional distress claims, where courts have upheld awards of over $100,000, have only been warranted where the discriminatory conduct was outrageous and shocking or where the physical health of plaintiff was significantly affected.

*Id.* (quotation marks and citations omitted); *see also Antoine*, 489 F. Supp. 3d at 97 ("Adjusting the values above for inflation[] results in the following scale: $6,500 to $46,000 for "garden-variety" cases; $65,000 to $131,000 for "significant" cases; and above $131,000 in "egregious" cases.").

Based on the sexual assault Plaintiff endured in the course of her employment, the Court finds that the complained-of conduct was "outrageous and shocking." Two cases provide guidance in assessing reasonable damages for Plaintiff's emotional distress in these circumstances. *See Offei v. Omar*, No. 11-CV-4283 (SAS) (MHD), 2012 WL 2086294, at *1 (S.D.N.Y. May 18, 2012), *report and recommendation adopted*, 2012 WL 2086356 (S.D.N.Y. June 8, 2012); *Antoine*, 489 F. Supp. 3d at 97. First, the plaintiff in *Offei* experienced a similar attack at work, where a patient "seize[d] her in a bear hug, kiss[ed] her on the lips and the neck, squeeze[d] her breasts and rub[bed] his clothed penis against her. . . . As [the plaintiff] tried to escape, [the defendant] blocked her way and grabbed her again from behind, once more kissing her and seizing her breasts."

2012 WL 2086294, at *1. In *Offei*, the plaintiff's resulting emotional distress was well documented and corroborated. *See id.* at *2 (discussing the plaintiff's immediate report of the assault to her supervisor, to security personnel, and to the police; also discussing that the plaintiff went to the hospital related to a panic attack within a week of the assault and began weekly treatment with a psychologist). The *Offei* plaintiff was awarded $250,000 in compensatory damages for her emotional distress. *Id.* at *7. In the second case, *Antoine*, the plaintiff was a cleaner who alleged that she was harassed by the CEO of the company for which she worked who, after joining the plaintiff on a cleaning assignment, "locked [the] door, and then he pushed [her] on the bed, . . . and he pulled down [her] pants and he just started . . . having sex with [her,] . . . like pushing [her] down on the bed and overpowering [her]" despite telling him to stop. *Antoine*, 489 F. Supp. 3d at 97; *see id.* at 78. The *Antoine* court noted the absence of corroboration beyond an affidavit from a domestic violence counselor relating "plaintiff's self-described medical conditions and history," including how the plaintiff discussed the impact of the attack on her anxiety and depression. *Id.* at 99. The Court nevertheless awarded the plaintiff $200,000 in emotional distress damages. *Id.*

The instant case falls somewhere near *Offei* and *Antoine* both in terms of Defendant Dennis's alleged conduct and Plaintiff's corroborative evidence. In terms of long-term impact, Plaintiff has presented evidence that in October 2019, she underwent a psychological evaluation with Dr. Gladys Frankel, Ph. D., a licensed psychologist, who noted "a direct connection between [Plaintiff]'s emotional experiences, experiences of a stress reaction including re-experiencing, and avoidance and her experiences of her employer's harassment." (Aff. of Psychologist, ECF No. 83-1, at 9.) The complained-of conduct is similar, if not more "outrageous and shocking" than in *Offei*, but Plaintiff's corroboration is not as substantial. Plaintiff's pastor provided a declaration stating that

she described the sexual assault to him in March 2017, and that he "could tell that Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed." (Lewis Decl., ECF No. 82, ¶¶ 9, 14.) Evaluating this case against *Antoine*, the sexual assault Plaintiff experienced, although very troubling, was less objectively egregious than forcible rape, but Plaintiff here has provided somewhat more corroboration. Although "the setting of a compensatory figure is an exercise in pretend exactitude," *Offei*, 2012 WL 2086294, at *7, the Court finds that the egregious conduct of Defendant Dennis is "shocking, likely criminal[,] . . . [and] credibly traumatic," *Antoine*, 489 F. Supp. 3d at 99. Given that *Offei* was decided in 2012, and *Antoine* in 2020, and taking into account inflation and Plaintiff's corroborating evidence, the Court respectfully recommends an award of $250,000 in emotional distress damages.

## B. Punitive Damages

"Punitive damages are available under Title VII in cases where 'the employer has engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Zimmerman v. Assocs. First Cap. Corp.*, 251 F.3d 376, 384 (2d Cir. 2001) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 529–30 (1999)). Under the NYCHRL, "a plaintiff is entitled to punitive damages where the wrongdoer's actions amount to willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." *Chauca v. Abraham*, 30 N.Y.3d 325, 329 (2017) (quotation marks omitted). Punitive damages are also available in assault actions. *Matthews v. Garrett*, 756 N.Y.S.2d 469, 470 (App. Div. 2d Dep't 2003). Such damages under New York law "may be assessed where a defendant's actions evince a high degree of moral culpability or demonstrate a wanton or reckless disregard for the rights of the plaintiff." *Solis-Vicuna v. Notias*, 898 N.Y.S.2d 45, 48 (App. Div. 2d

Dep't 2010). Punitive damages are also available under the GMVPA. N.Y.C. Admin. Code § 10-1104(a).

Courts consider the following factors when assessing punitive damages: "(1) the degree of reprehensibility of the defendant's conduct; (2) the difference between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and the civil penalties imposed in comparable cases." *DeCurtis v. Upward Bound Intern., Inc.*, No. 09-CV-5378 (RJS), 2011 WL 4549412, at *5 (S.D.N.Y. Sept. 27, 2011) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). When considering sexual assault cases, courts in the Second Circuit assess punitive damages relative to compensatory damages. *See Antoine*, 489 F. Supp. 3d at 102 (punitive nearly equal to compensatory); *Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) (punitive less than compensatory); *Doe v. HRH Prince Abdulaziz Bin Fahd Alsaud, Saudi Oger Ltd.*, No. 13-CV-571 (RWS), 2017 WL 4541426, at *7 (S.D.N.Y. Oct. 10, 2017) (same); *Amador v. Galbreath*, No. 10-CV-6702 (DGL), 2013 WL 1755784, at *3 (W.D.N.Y. Apr. 24, 2013) (one-to-one ratio of punitive to compensatory); *Ortiz v. Lasker*, No. 08-CV-6001 (TLK), 2010 WL 3476017, at *2 (W.D.N.Y. Aug. 30, 2010) (same); *Cash v. County of Erie*, No. 04-CV-0182 (JTC) (JJM), 2009 WL 3199558, at *3–4 (W.D.N.Y. Sept. 30, 2009) (punitive less than compensatory).

The alleged conduct by Defendant Dennis — sexual assault of an employee — is highly reprehensible. Based on the above cited cases and civil damages granted in comparable cases, the Court finds that a one-to-one award of punitive damages compared to compensatory damages is appropriate here, and recommends granting Plaintiff $250,000 in punitive damages. *See Antoine*, 489 F. Supp. 3d at 102 (granting $375,000 in punitive damages where the plaintiff was raped by her employer); *Offei*,

2012 WL 2086294, at *8 (recommending $100,000 in punitive damages for sexual assault at work while awarding $250,000 in compensatory damages).

### C. Post-Judgment Interest

Post-judgment interest is mandatory and governed by federal statute. *See* 28 U.S.C. § 1961(a); *Plaza Motors of Brooklyn, Inc. v. Rivera*, No. 19-CV-6336 (LDH) (RLM), 2020 WL 9814102, at *12 (E.D.N.Y. Sept. 17, 2020), *report and recommendation adopted*, Nov. 30, 2020 ECF Order Adopting R. & R. Therefore, the Court respectfully recommends that Plaintiff be awarded post-judgment interest using the federal rate set forth in 28 U.S.C. § 1961(a), calculated from the date the Clerk of the Court enters judgment in this action until the date of payment.

### V. Attorneys' Fees and Costs

Title VII and the NYCHRL allow for prevailing plaintiffs to recover reasonable attorneys' fees and costs.[11] 42 U.S.C. § 2000e-5(k); N.Y.C. Admin. Code § 8-502(g). Plaintiff requests $32,670 in attorneys' fees and $567.00 in costs. (Suppl. Submission, ECF No. 89, at ECF p. 6.) Courts "us[e] their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009) (quotation marks and citation omitted).

---

[11] The NYSHRL now provides for attorneys' fees for employment discrimination actions, but the fee provision was not enacted until 2019, well after the complained-of conduct occurred and after Plaintiff initiated this action. *See Casmento v. Volmar Constr., Inc.*, No. 20-CV-944 (LJL), 2022 WL 17666390, at *2 n.2 (S.D.N.Y. Dec. 14, 2022). Because fees are unambiguously available under Title VII and the NYCHRL, the Court need not decide if fees are available under NYSHRL in this case. *See id.* (stating that the court "does not address this issue" because attorneys' fees are available under the NYCHRL).

## A. Attorneys' Fees

With very limited exceptions, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit." *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) (quotation marks omitted); *see also Universal Elec. Corp.*, 970 F. Supp. 2d at 127–28. The court must review these time records and the hours an attorney billed in order to determine reasonableness and, in doing so, should examine the value of the work product and "exclude excessive, redundant or otherwise unnecessary hours." *Concrete Flotation Sys., Inc. v. Tadco Constr. Corp.*, No. 07-CV-319 (ARR) (VVP), 2010 WL 2539771, at *5 (E.D.N.Y. Mar. 15, 2010) (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 2009)), *report and recommendation adopted*, 2010 WL 2539661 (E.D.N.Y. June 17, 2010). "[A] fee award should be based on scrutiny of the unique circumstances of each case[.]" *McDaniel v. County of Schenectady*, 595 F.3d 411, 426 (2d Cir. 2010). In lieu of an itemized reduction, the Court may also "make an across-the-board percentage reduction." *Guauque Castiblanco v. Don Alex Peru, Inc.*, No. 20-CV-2235 (MKB) (RML), 2021 WL 4755701, at *10 (E.D.N.Y. Aug. 20, 2021).

Plaintiff's counsel, Mr. Barrett, submitted billing records reflecting a total of 72.6 hours worked — including eight hours by attorney Alex Cabeceiras and 64.6 hours by Mr. Barrett. (Suppl. Submission, ECF No. 89, at ECF p. 3, 6.) In support of the requested fees, Plaintiff's counsel has submitted billing records that document specific tasks performed, hours worked, and the hourly rates requested for attorneys. (*See generally id.*) The requested fee is based on an hourly billing rate of $450 for both attorneys who performed work on the case. (*Id.* at ECF p. 6.)

### 1. *Number of Hours*

"When considering an application for attorneys' fees, the court should exclude 'excessive, redundant, or otherwise unnecessary' hours." *Rosen v. LJ Ross Assocs., Inc.*,

No. 19-CV-5516 (ARR) (VMS), 2022 WL 493728, at *6 (E.D.N.Y. Jan. 24, 2022) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)), *report and recommendation adopted*, 2022 WL 493274 (E.D.N.Y. Feb. 17, 2022). Alternatively, "in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quotation marks and citation omitted); *see also McDonald ex rel. Prendergast v. Pension Plan of the NYSA - ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (reiterating that a court may use a percentage reduction "as a practical means of trimming fat from a fee application" (quotation marks and citation omitted)); *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (remanding the case for reconsideration "because the recitation of reasons for accepting all of counsel's pre-verdict requests for fees suggests that the Magistrate Judge may have failed to critically examine these requests," but noting that "[w]e do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items"); *see also De La Paz v. Rubin & Rothman, LLC*, No. 11-CV-9625 (ER), 2013 WL 6184425, at *4 (S.D.N.Y. Nov. 25, 2013).

In determining a reasonable number of hours, "[t]he relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). Courts "must make 'a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.'" *Hernandez v. Quality Blacktop Servs., Inc.*, No. 18-CV-4862 (RJD) (RML), 2021 WL 1413246, at *11 (E.D.N.Y. Mar. 10, 2021) (citation omitted) (quoting *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012)). At the same time,

courts "'need not, and indeed should not, become green-eyeshade accountants'" when evaluating fee requests. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 601 (2d Cir. 2020) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

As a general matter, courts agree with fee applicants' requests when the amount of hours billed is reasonable. *See, e.g.*, *Gonzales v. Trees R US Inc.*, No. 14-CV-7487 (JMW), 2022 WL 3045714, at *2 (E.D.N.Y. Mar. 11, 2022). By contrast, when the number of hours billed is excessive, courts may make a blanket reduction. *See Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019); *see, e.g.*, *Lu Wan v. YWL USA, Inc.*, No. 18-CV-10334 (CS), 2021 WL 1905036, at *6–7 (S.D.N.Y. May 12, 2021) (trimming 40% of total hours following a finding that the billing records included excessive and unnecessary entries; *Ahn v. Sun Cleaners, Inc.*, No. 19-CV-5919 (DLI) (PK), 2022 WL 586022, at *12 (E.D.N.Y. Feb. 18, 2022), *report and recommendation adopted*, Mar. 18, 2022 ECF Order Adopting R. & R. (reducing the number of hours for which fees were awarded by 30%, finding that they were "excessive and unreasonable"). The concerns identified in *Ahn* included excessive time entries and billing for inappropriate administrative tasks. *Ahn*, 2022 WL 586022, at *11–12. The Court has some of the same concerns here.

First, the Court notes that the billing records include at least 15 hours related to pursuit of claims against the Golden Krust entities. (*See generally* Suppl. Submission, ECF No. 89, at ECF pp. 3–6.) The Court finds it inappropriate to seek reimbursement from one set of defendants for fees incurred trying to assert claims that were dismissed against another set of defendants entirely, and recommends subtracting these hours from the requested reimbursement.

Second, the Court is concerned that the billing records were not created contemporaneously, as required in the Second Circuit. *Scott*, 626 F.3d at 132. There are multiple instances where Plaintiff's counsel recorded time spent on a task over a range

of dates. (Suppl. Submission, ECF No. 89, at ECF pp. 4–6 (noting 15 instances where a line item representing the hours worked on one task is spread over a range of dates from a two-day period to a 15-month period).) This practice is concerning and, at a minimum, suggests that the billing records provided are summarized to some extent and were not maintained contemporaneously with the work reflected therein.[12] However, because the records reflect "the date, the hours expended, and the nature of the work done" for each attorney, the Court does not recommend denying the fee application in its entirety, but advises Plaintiff's counsel that the quality of the records submitted is a cause for concern and that provision of similar records in the future could result in a denial of counsel's application for fees. *Scott*, 626 F.3d at 133 (quotation marks omitted).

Third, the Court notes that the billing records appear to include inappropriate billing for administrative tasks and overbilling related to correspondence. For example, the billing records report spending 0.5 hours on ECF filings related to proof of service and waiver of service and 1.5 hours on reviewing court orders and scheduling. (Suppl. Submission, ECF No. 89, at ECF p. 4.) Furthermore, the Court identified 12 entries related to correspondence, many of which are billed in 0.25 to 0.75 hour increments, while some are billed in even greater increments. (*Id.* at ECF pp. 3–5.) Where counsel is billing in quarter hour increments, discussed further *infra*, it is very likely that correspondence took less than 15 minutes, resulting in a cumulative inflation of time

---

[12] At worst, the entries that span multiple dates could evidence that the records were created retroactively, which could constitute grounds to deny the request for attorneys' fees entirely. *See J&J Sports Prods., Inc. v. Enriquez*, No. 19-CV-2384 (EK) (CLP), 2021 WL 4311286, at *2 (E.D.N.Y. July 16, 2021) (citing *Scott*, 626 F.3d at 130) (recommending denial of plaintiff's request for fees where plaintiff admitted reconstructing billing records from a review of files as opposed to maintaining contemporaneous records).

spent on these types of tasks. *See, e.g., Ryan v. Allied Interstate, Inc.*, 882 F. Supp. 2d 628, 637 (S.D.N.Y. 2012) (observing that "several entries of 0.1 (six minutes) on the same day for review of ECF emails" inflated the time spent); *see also Jones v. Pawar Bros. Corp.*, No. 17-CV-3018 (PKC) (SJB), 2023 WL 6214213, at *13 (E.D.N.Y. Sept. 25, 2023) (finding hours billed to be excessive, in part, "due to the repeated 0.1 hour billings for email and ECF review"); *Hershkowitz v. ARstrat, LLC*, No. 21-CV-6093 (EK) (TAM), 2023 WL 2311429, at *5 (E.D.N.Y. Jan. 25, 2023), *report and recommendation adopted,* 2023 WL 2306071 (E.D.N.Y. Feb. 28, 2023).

Fourth, the Court finds that the hours billed for preparation of the motion for default judgment appear to be excessive. The Court notes that counsel billed 11.5 hours over a six-month period for preparation, service, and filing of the default papers. (Suppl. Submission, ECF No. 89, at ECF pp. 5–6.) Although 11 hours may not be excessive for a motion with a thorough analysis of facts and law, that is not what we have here. In this case, Plaintiff's memorandum of law in support of default judgment was under five pages, providing two pages summarizing the factual history of the case and one page of argument. (Mem. of Law, ECF No. 80.) Indeed, the memorandum provided virtually no guidance to the Court as to Plaintiff's views of the applicable legal standards and authority related to the 14 causes of action alleged here and which factual allegations support Plaintiff's claims as to each cause of action. It strains credulity that it took one attorney 11 hours to prepare the memorandum of law before the Court.

Finally, the Court notes that counsel apparently records time "in quarter-hour increments, rather than the typically utilized six-minute increments." *Ethelberth v. Choice Sec. Co.,* No. 12-CV-4856 (PKC) (VMS), 2016 WL 11469536, at *13 (E.D.N.Y. Aug. 5, 2016). Courts have found this method of billing excessive and have cut fee requests that

employed this practice as a result. *See Trs. of Loc. 813 Ins. Tr. Fund v. Bradley Funeral Serv., Inc.*, No. 11-CV-2885 (ARR) (RLM), 2012 WL 3871759, at *7 (E.D.N.Y. Aug. 10, 2012) ("[P]laintiff's counsel's method of billing tends to overstate the amount of time expended, since the firm divides the billed hours into fifteen-minute increments instead of the preferred six-minute increments."), *report and recommendation adopted*, 2012 WL 3871755 (E.D.N.Y. Sept. 4, 2012); *Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC*, No. 05-CV-6757 (LTS) (MHD), 2009 WL 466136, at *4 (S.D.N.Y. Feb. 25, 2009) (emphasizing that recording time in quarter hour segments "adds an upward bias in virtually all cases" and is a practice that has "repeatedly been found improper and justifies some further conservatism in calculating the amount of compensable time").

For all of these reasons, the Court recommends trimming counsel's hours by 20%, after deduction of time spent on work related to the Golden Krust entities. After deducting the 15 hours spent on Golden Krust-related claims and motions and trimming 20% of the remaining hours, the hours for which the Court recommends awarding fees are 46.08.[13]

2. *Hourly Rate*

Courts in this circuit determine a reasonable hourly rate "us[ing] the prevailing hourly rates in the district in which they sit." *Cortes v. Juquila Mexican Cuisine Corp.*, No. 17-CV-3942 (RER), 2021 WL 1193144, at *2 (E.D.N.Y. Mar. 29, 2021). In the Eastern District of New York, experienced attorneys in employment discrimination cases are awarded rates between $300 and $400 per hour and up to $450 per hour for partners in large firms or attorneys with extensive experience. *Tenecora v. Ba-kal Rest. Corp.*, No. 18-

---

[13] Calculated as (72.6 hours – 15 hours) * 0.8.

CV-7311 (DHR) (AKT), 2020 WL 8771256, at *28 (E.D.N.Y. Nov. 30, 2020) (quotation marks omitted) (collecting cases), *report and recommendation adopted in relevant part*, 2021 WL 424364 (E.D.N.Y. Feb. 8, 2021). Here, both of the attorneys who worked on Plaintiff's case request an hourly rate of $450. (Suppl. Submission, ECF No. 89, at ECF p. 6.) Counsel did not, however, provide any documentation or information to support the requested rates for counsel, such as their qualifications and experience in the field. Accordingly, the Court recommends using a rate of $300 per hour for work performed, and warns counsel that failure to include information regarding the billing professionals' qualifications in the future may result in a denial of counsel's application for fees.

*　*　*　*　*

Multiplying the reasonable number of hours spent on this case (46.08) by $300 per hour, the Court respectfully recommends awarding attorneys' fees of $13,824 in this case.

### B. Costs

Plaintiff seeks $567.00 in costs. (Suppl. Submission, ECF No. 89, at ECF p. 6.) "Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying." *Pichardo v. El Mismo Rincon Latino Corp.*, No. 17-CV-7439 (FB) (SJB), 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotation marks and alteration omitted), *report and recommendation adopted*, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018). Plaintiff seeks to recover $400.00 for the complaint filing fee and $167.00 for service costs. (Suppl. Submission, ECF No. 89, at ECF p. 6.) The Court recommends that Plaintiff be awarded $567.00 in costs.

## CONCLUSION

For the reasons discussed above, the Court respectfully recommends that Plaintiff's motion for default judgment be granted in part and denied in part. More specifically, this Court recommends:

(1) granting Plaintiff's motion for default judgment against Defendant Olive Leaves for discrimination under Title VII and the NYSHRL;

(2) granting Plaintiff's motion for default judgment against Defendant Dennis for aiding and abetting discrimination under the NYSHRL;

(3) granting Plaintiff's motion for default judgment against all Defendants for discrimination under the NYCHRL;

(4) dismissing Plaintiff's claims of retaliation under Title VII against Defendant Olive Leaves and under the NYSHRL and NYCHRL against all Defendants as insufficiently pleaded, without prejudice;

(5) granting Plaintiff's motion for default judgment against Defendant Dennis for assault and battery under New York law;

(6) dismissing Plaintiff's claim of intentional infliction of emotional distress against Defendant Dennis as duplicative, without prejudice;

(7) dismissing Plaintiff's claim against both Defendants under NYCHRL Section 8-107(13);

(8) dismissing Plaintiff's claim under the New York State Penal Law;

(9) granting Plaintiff's motion for default judgment against Defendant Dennis under the GMVPA;

(10) awarding Plaintiff $500,000 in damages;

(11) awarding post-judgment interest at the rates set forth in 28 U.S.C. § 1961(a), to be calculated from the date judgment is entered until the date of payment; and

(12) awarding Plaintiff's request for attorney's fees and other costs, in the amount of $14,391.

In addition, as noted *supra*, Plaintiff may submit supplemental documentation, such as a detailed affidavit, in support of her requested wage damages, including her claims for front pay, back pay, and pre-judgment interest, within one week of the issuance of this report and recommendation, i.e., by February 23, 2024.

\*   \*   \*   \*   \*

This report and recommendation will be filed electronically and a copy sent by mail to Defendants Olive Leaves and Stanley Dennis. As a courtesy, the Court also respectfully directs Plaintiff to provide a copy of this report and recommendation to Defendants forthwith and to file proof of same by February 21, 2024. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Hector Gonzalez at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation]

operates as a waiver of any further judicial review of the magistrate[ judge's] decision"

(quotation marks omitted)).

**SO ORDERED.**

Dated: Brooklyn, New York
February 16, 2024

*Taryn A. Merkl*
_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE